**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUSTIN LOVE, | |
| Petitioner, | Civil Action No. 22-2768 (MAS) |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**SHIPP, District Judge**

This matter comes before the Court on Petitioner Justin Love's motion to vacate sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Following an order to answer, the Government filed a response to the amended motion (ECF No. 6), to which Petitioner replied following the appointment of counsel (ECF No. 24). For the following reasons, this Court will deny the motion, and will deny Petitioner a certificate of appealability.

## I.     BACKGROUND

Petitioner's convictions in this matter arise out of his participation in interstate dogfighting operations in contravention of applicable federal law. The Third Circuit briefly described the facts underlying this operation on direct appeal as follows:

> [Petitioner and his codefendants] were convicted of various federal crimes in connection with a dogfighting conspiracy. The conspiracy was uncovered by federal agents monitoring wiretaps authorized as part of an investigation into Anthony "Monte" Gaines. Over the course of six weeks beginning in October 2015, agents intercepted several days' worth of conversations between Mr. Gaines and others, including [Petitioner's codefendant] Ware and [Petitioner], regarding various aspects of the dogfighting activity, which resulted

in several convictions including [Petitioner's]. The trial evidence showed that [Petitioner and his codefendants] maintained dogs that were bred, trained, and kept for fighting; that Mr. Ware intended to enter at least one dog in a fight; and that [Petitioner] actually entered dogs in fights, one of which was recorded in videos found on his cell phone. Further, possession of certain dogs passed between [Petitioner, his codefendants,] and their co-conspirators at various times.

. . . .

[Petitioner] was convicted of (i) conspiracy to sponsor and exhibit dogs in animal fighting ventures, contrary to 7 U.S.C. § 2156(a)(1) and 18 U.S.C. § 49 and in violation of 18 U.S.C. § 371; (ii) conspiracy to sell, buy, possess, train, transport, deliver, and receive dogs for the purposes of having the dogs participate in animal fighting ventures, contrary to 7 U.S.C. § 2156(b) and 18 U.S.C. § 49 and in violation of 18 U.S.C. § 371; (iii) two counts of knowingly purchasing and receiving a dog for purposes of having the dog participate in an animal fighting venture, contrary to 7 U.S.C. § 2156(b), 18 U.S.C. § 49, and 18 U.S.C. § 2; and (iv) six counts of knowingly possessing a dog for purposes of having the dog participate in an animal fighting venture, contrary to 7 U.S.C. § 2156(b), 18 U.S.C. § 49, and 18 U.S.C. § 2.

At trial, [Petitioner] attempted to establish that his participation in the conspiracy was in his capacity as an informant in a dogfighting investigation. Specifically, [he] sought to develop the theory that he had cooperated with Larry Donato, then a New Jersey SPCA officer, when he "engaged in activities designed to cultivate information about dog fighting ventures and persons involved in illegal dog fighting activities." The Government argued that [Petitioner] was asserting a public authority defense and that he had failed to comply with the notice requirements set forth in Federal Rule of Criminal Procedure 12.3.

. . . .

On the fourth day of trial, the Government petitioned the District Court to preclude the testimony of any witnesses who would have testified in support of a public authority defense, including "Government witnesses who have been subject to cross-examination under this theory." When the issue was first raised, [Petitioner's] counsel, Mr. Powell, argued that Rule 12.3 was inapplicable. In a written submission and subsequent oral presentations, Mr. Powell explained that [Petitioner] sought to assert an "innocent intent" defense, as opposed to a public authority

2

defense. [Although counsel disclaimed he was attempting to raise a public authority defense, he also argued the Government had not been prejudiced and he should be permitted to develop such a defense if the facts permitted, despite asserting he only intended to pursue the innocent intent strategy directly.]

The District Court initially denied the Government's motion, which the Government subsequently renewed multiple times. The first renewal was based on new discovery the Government had obtained from Mr. Powell, including text messages in which [Petitioner] appeared to tell Donato that he was working for a federal government employee. The District Court deemed the issue unripe and declined to rule on the renewed motion. The Government next raised the issue at a sidebar while [Petitioner] was on the stand, after Mr. Powell had asked him various permutations of the question "Everything we've seen in the case that relates to you, to your understanding were those all activities undertaken by you at the behest of Mr. Donato?" Prior to this sidebar, [Petitioner] had also testified about unproduced emails with Donato and had discussed his interactions with "an alleged public official named John for whom [the defense] ha[d] a recording that [the Government] never received." [Petitioner "had also testified throughout his direct examination about the informant relationship he had purportedly developed with Mr. Donato and other police officers, as well as the actions he took to further these relationships."] The District Court did not rule on the motion at this time.

After [Petitioner's] testimony had concluded, the District Court found he had certainly "asserted an actual exercise of public authority." The District Court granted the Government's renewed motion.

The immediate result of this ruling was the preclusion of certain testimony of Special Agent Nicholas Tranchitella. Mr. Powell had proffered that Agent Tranchitella's testimony would be relevant "as to whether or not he had an opportunity to interview Mr. Donato and as to whether or not Mr. Donato is actually a real person and a real former employee of the SPCA." The District Court also charged the jury regarding the public authority defense, over Mr. Powell's objection, and did not instruct the jury regarding an innocent intent defense. In its jury charge, the District Court stated that [Petitioner] should not be found guilty if the jury were to find that (1) a government official directed [Petitioner] to engage in the conduct charged against him, (2) the official had actual or apparent authority to grant such authorization, and (3) in engaging in the conduct, [Petitioner] had reasonably relied on the official's actual or apparent authorization.

*United States v. Ware*, 858 F. App'x 499, 507-509, 508 n.7-8 (3d Cir. 2021).

## II.     LEGAL STANDARD

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging

the validity of his sentence.  Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws of
> the United States, or that the court was without jurisdiction to
> impose such a sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255.  Unless the moving party claims a jurisdictional defect or a constitutional

violation, to be entitled to relief the moving party must show that an error of law or fact constitutes

"a fundamental defect which inherently results in a complete miscarriage of justice, [or] an

omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*,

599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert.*

*denied*, 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J.

2003).

## III.    DISCUSSION

### A.     No Evidentiary Hearing Is Necessary In This Matter

A district court need not hold an evidentiary hearing on a motion to vacate where "the

motion and files and records of the case conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545-56 (3d Cir. 2005); *United States*

*v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  "Where the record, supplemented by the trial judge's

personal knowledge, conclusively negates the factual predicates asserted by the petitioner or

indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge*

*v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Gov't of V.I. v. Nicholas*, 759

F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8

(3d Cir. 2014); *Booth*, 432 F.3d at 546.  Because Petitioner's claims are without merit for the

reasons expressed below, no evidentiary hearing is necessary in this matter.

**B.      Petitioner's ineffective assistance of counsel claims**

In his motion to vacate sentence, Petitioner raises a number of claims in which he asserts

that his trial counsel was constitutionally deficient.  The standard applicable to such claims is well

established:

> [c]laims of ineffective assistance are governed by the two-prong test
> set forth in the Supreme Court's opinion in *Strickland v.
> Washington*, 466 U.S. 668 (1984).  To make out such a claim under
> *Strickland*, a petitioner must first show that "counsel's performance
> was deficient.  This requires [the petitioner to show] that counsel
> made errors so serious that counsel was not functioning as the
> 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also
> United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).  To
> succeed on an ineffective assistance claim, a petitioner must also
> show that counsel's allegedly deficient performance prejudiced his
> defense such that the petitioner was "deprive[d] of a fair trial . . .
> whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493
> F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper
> standard for attorney performance is that of 'reasonably effective
> assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).  A
> petitioner asserting ineffective assistance must therefore show that
> counsel's representation "fell below an objective standard of
> reasonableness" under the circumstances. *Id.*  The reasonableness
> of counsel's representation must be determined based on the
> particular facts of a petitioner's case, viewed as of the time of the
> challenged conduct of counsel. *Id.*  In scrutinizing counsel's
> performance, courts "must be highly deferential . . . a court must
> indulge a strong presumption that counsel's conduct falls within the
> wide range of reasonable professional assistance." *Strickland*, 466
> U.S. at 689.
>
> Even where a petitioner is able to show that counsel's
> representation was deficient, he must still affirmatively demonstrate
> that counsel's deficient performance prejudiced the petitioner's

5

defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his first claim, Petitioner asserts that counsel proved ineffective in failing to file timely notice of a public authority defense to his criminal charges, and in failing to fully and directly pursue that defense instead of an innocent intent defense. By failing to file the required notice, Petitioner contends, he was denied the ability to call Agent Tranchitella as a witness at trial. According to Petitioner, Agent Tranchitella would have corroborated that Detective Donato did, in fact, exist, despite Donato's existence and employment with the NJSPCA not being called into question by the Government during trial.[1] Tranchitella's testimony was therefore of extremely limited value to Petitioner's defense because it would only have reestablished a point not in dispute – that Donato was who Petitioner said he was.

---

[1] As the Third Circuit noted on direct appeal, "The Government did not attempt to contest these facts . . . [and] it made no objection to [counsel's] discussing, during redirect examination of [Petitioner], the U.S. Attorney's Office having interviewed Mr. Donato." *Ware*, 858 F. App'x at 509 n.9.

To succeed on his claim, Petitioner would have to show both that counsel's choice not to file the notice was deficient—and not part of a sound trial strategy—and that he was actually prejudiced by that failure. Turning first to the issue of deficiency, the Court notes that there is a significant difference between an assertion of an innocent intent defense and a public authority defense. Whereas an innocent intent defense seeks merely to assert that a defendant lacked the required *mens rea* to have committed the charged crime, *see, e.g.*, *United States v. Gross*, 961 F.2d 1087, 1102-03 (3d Cir. 1992), a public authority defense is an affirmative defense of justification on which the defendant bears the burden of proof by a preponderance of the evidence. *See United States v. Pitt*, 193 F.3d 751, 756-58 (3d Cir. 1999) (public authority defense is an affirmative defense of justification), *abrogated on other grounds by Honeycut v. United States*, 137 S. Ct. 1626 (2017); *see also United States v. Taylor*, 686 F.3d 182, 192-93 (3d Cir. 2012) (burden of proving affirmative defense of justification is on the defendant by a preponderance of the evidence). Counsel would thus have good cause to choose an innocent intent defense over a public authority defense. This would avoid taking on a burden that may not be met, especially where the Government's pretrial interview of Donato indicated that his only interaction with Petitioner was a single tip, made for the purpose of seeking reward money, which ultimately did not result in any useful information or arrests. These facts, in addition to the burden of proof applicable to a public authority defense, led counsel to choose to pursue an innocent intent theory. Given the weak evidence of any public authorization of Petitioner's deeds, this appears to have been a reasonable strategic choice rather than deficient performance. This is especially true in light of counsel's conclusion that Donato had no authority to permit Petitioner to engage in federal offenses, and would almost certainly not corroborate Petitioner's testimony if called at trial in light of the pretrial interview he gave to the Government.

Even were this course not reasonable strategy, Petitioner was not prejudiced by counsel's choice of strategy. Had counsel pursued a public authority defense, either Petitioner or the Government would have called Donato to the stand. As both the Government's interview and Petitioner's own interview of Donato after trial indicate, Donato recalled Petitioner providing information only once—in 2013 when he reported a purported dog fight that did not pan out in an attempt to acquire reward money and in an effort to have Donato pay his phone bill. Petitioner was never formally made an informant or given further direction to break the law by Donato. Given the jury's rejection of Petitioner's testimony that he acted on behalf of Donato at trial, testimony by Donato either after being called by Petitioner or by the Government as a rebuttal witness had Petitioner been permitted to pursue the defense by the trial judge, would have effectively eviscerated that defense.

Moving beyond Donato himself, the evidence presented at trial by the Government showed—often in significant detail—that Petitioner was engaged in dogfighting enterprises both long before and after his sole tip to Donato, and was actively engaged in those enterprises apart from any efforts to provide tips to Donato for compensation. The evidence at trial indicated that Petitioner bred fighting dogs for the purpose of fighting, registered dogs with dog fighting registries, engaged in and at times even filmed brutal dog fights, and put his supposedly beloved pet in danger to breed further fighting dogs after she had reached ten years of age, well beyond a standard dog breeding age. All of these facts, and significant evidence in further support of Petitioner having been actively engaged in the breeding, training, and fighting of dogfighting dogs and their movement across state lines, clearly was beyond the scope of anything Donato could have authorized and Petitioner apparently pursued those goals for a considerable period of time. There is no significant likelihood that the jury would have accepted Petitioner's public authority defense had he been permitted to further develop it, and the calling of Donato, even as a rebuttal

8

witness, could only have hurt such a defense. As no reasonable juror would have found Petitioner not guilty had he been permitted to pursue that defense, Petitioner cannot show that he was prejudiced by counsel's trial strategy. Petitioner's first ineffective assistance claim is therefore without merit.

In his second claim, Petitioner contends that counsel represented him under the auspices of a conflict of interest after the trial judge threatened potential sanctions based on counsel's eliciting of testimony which was more supportive of a late-raised public authority defense rather than an innocent intent defense. Criminal defense counsel will be found to be constitutionally ineffective based on conflicts of interest only where counsel "'actively represented conflicting interests,' and an actual conflict of interest adversely affected the lawyer's performance." *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3d Cir. 1998) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). Where a criminal defendant can show an actual conflict of interest adversely affected the lawyer's performance, prejudice will be presumed. *Id.* Where a petitioner instead only shows "a potential conflict of interest," he will still be required to prove prejudice. *Id.* The "mere fear of rebuke from the court" is not sufficient to give rise to an actual conflict of interest sufficient to warrant a presumption of prejudice. *See, e.g.*, *United States v. Shark*, 51 F.3d 1072, 1076 (D.C. Cir. 1995).

In this case, Petitioner identifies only the threat of sanctions as the basis for his belief that counsel had a conflict of interest. Notably, that threat did not prevent counsel from continuing to vigorously defend Petitioner, nor did it in any way stop him from continuing to argue to the jury Petitioner's theory of the case – i.e., that he had been acting as an informant and therefore lacked the requisite criminal intent. Petitioner has not shown an actual conflict of interest, and has in any event not shown that the threat of sanctions actually prejudiced his defense in light of the strong evidence of Petitioner's guilt as discussed above. Petitioner's claim that counsel proved ineffective in light of an alleged conflict is therefore without merit and must be denied as such.

9

In his remaining ineffective assistance claims, Petitioner seeks to incorporate the claims he raised in the motion for a new trial he filed after his guilty verdict. Aside from the two claims discussed above, Petitioner's motion for a new trial contained the following claims – that counsel proved ineffective in failing to conduct a more thorough investigation into Petitioner's phone records, veterinary records, and NJ SPCA records; that counsel failed to interview and call at trial Donato, Plaintiff's father, or a veterinary expert to counter testimony proffered by the Government; that counsel failed to sufficiently challenge evidence discovered on or near one of Petitioner's properties during a search pursuant to a warrant; that counsel's opening statement was deficient; and that counsel "abandoned" Petitioner after trial by failing to file challenges to a draft presentence report.

Turning first to Petitioner's investigation related claims,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n.23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

> Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,

> > a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the

> investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.
>
> *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Petitioner, in both his motion for a new trial and his filings in this matter, fails to show what evidence would have resulted from further investigation that would have had any potential effect on the outcome of his trial. Indeed, in his investigations after the guilty verdict, the counsel who filed the motion for a new trial extensively investigated the very issues Petitioner now raises and failed to find any smoking gun document, phone record, or other information that would have had any true likelihood of changing the outcome of trial. Instead, counsel discovered that the SPCA records no longer existed, that the veterinarian records and the veterinarian in question could no longer be obtained or located, and failed to produce any phone or other electronic records that had any ability to have a bearing on Petitioner's trial. *See* Docket No. 17-51 at ECF No. 268. Turning to counsel's investigation into witnesses, the post-trial interviews conducted by Petitioner's sentencing counsel indicate that, had counsel interviewed Donato and other police sources, he would have at best discovered information indicating that Petitioner had only provided one tip to Donato that failed to produce any results, and that Petitioner sought to provide tips in

exchange for money and the paying of his cell phone bill, which would have been of no aid to the defense and if anything would have undermined Petitioner's testimony at trial that he had acted as an agent of law enforcement. Likewise, Petitioner provides no purported veterinary expert who would have testified to the contrary of the testimony provided by the government's expert, and fails to provide any other documentary veterinary evidence or learned treatise which could have been used to counter the testimony of the Government's expert witness in any meaningful way. Thus, it is clear that had counsel engaged in the further investigation Petitioner sought, as sentencing counsel did after trial, such efforts would have produced no information with a reasonable likelihood of impacting the outcome of trial. Instead, it would have likely produced information discoverable by the Government which would have hindered both what the defense counsel offered and that which Petitioner wishes he had offered. Petitioner's investigatory claims thus fail to show any prejudice suffered by counsel's alleged failures, and are without merit.

Plaintiff's assertion that counsel should have sought to call witnesses including Donato, his father, other police sources, or a veterinary expert are equally meritless. Had counsel called Donato or the other police officers interviewed by Petitioner's sentencing counsel, the result would have been information that strongly undercut Petitioner's defense – information showing that Petitioner had not been made Donato's agent and at best provided a single tip which failed to pan out in exchange for having his cell phone bill paid. Had that testimony been provided at trial, it would not have had any reasonable likelihood of impacting the verdict in light of the strong evidence of guilt produced by the Government.

Likewise, had counsel called Petitioner's father, Petitioner's father's purported testimony, as contained in his affidavit, would have been of limited evidential value. The affidavit of Petitioner's father essentially boils down to Mr. Love disputing the exact location of certain dog kennels (whether they were on or adjacent to the property being searched), disputing the ownership

of certain dogs (whether they were Petitioner's or intended as gifts to family members), and attempting to provide excuses for why certain items (such as batteries, veterinary needles, poles with chains, and the like) were found during the search.  Given Mr. Love's obvious bias in favor of Petitioner, and Petitioner's own opportunities to explain the evidence in question, as well as the potential for Mr. Love having to plead the fifth to avoid incriminating himself in light of his own apparent involvement in dog fighting, which he admitted to police previously, and in light of the strong evidence to the contrary provided by the Government, there is no reasonable likelihood that Mr. Love's purported testimony would have altered the outcome of Petitioner's trial.  The Government produced significant evidence that Petitioner was engaged in dogfighting, and the testimony of a family member who would himself be challenged with prior statements made to law enforcement on cross-examination would have had little if any likelihood of impacting the outcome of Petitioner's case.  Petitioner was thus not prejudiced by the failure to call his father as a witness at trial.

Petitioner's belief that counsel should have challenged certain evidence as being on an adjacent property likewise would have not impacted the outcome of his trial.  Even if Mr. Love is correct that the dogs and kennels were on an adjacent property, by his own statement they were clearly visible from the property that the Government searched and thus would have been admissible under the inevitable discovery doctrine.  *See, e.g.*, *Nix v. Williams*, 467 U.S. 431, 443-44 (1984).  Counsel's failure to file such a motion therefore did not prejudice Petitioner.

Petitioner has likewise failed to show that counsel was ineffective in failing to further challenge the Government's veterinary expert using further treatises, veterinary information, or an expert witness.  As Petitioner has not provided an expert to aver that the expert would have given the testimony Petitioner now wishes had been provided, Petitioner cannot show he was prejudiced by counsel's failure to call such an expert.  *See, e.g.*, *Tolentino v. United States*, No. 13-4168, 2014

WL 3844807, at *3 (D.N.J. July 31, 2014) ("[a petitioner's] failure to include a sworn statement regarding the nature of [a witness's] proposed testimony is fatal to his making a *prima facie* showing of prejudice"); *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001). Likewise, the record indicates that counsel ably cross-examined the Government's veterinarian and challenged her testimony and methods. Here, Petitioner has failed to provide any further information or evidence that could have been used to "better" cross examine that witness. Petitioner has thus failed to show that he was prejudiced by this alleged failing.

Petitioner's argument regarding counsel's opening statement similarly fails to show that counsel was deficient or that Petitioner was prejudiced by the statement. Contrary to the bald assertions in Petitioner's motion for a new trial, incorporated here, a review of counsel's opening indicates that counsel attempted to put into the jurors' minds that Petitioner was not actually engaged in dogfighting but was instead a pet owner and breeder who wished to out dog fighters after harm had been done to one of his pets that had been stolen. Counsel thus suggested that the Government's case was missing key information that would be filled in by Petitioner's defense, and argued that Petitioner lacked the necessary intent to be found guilty, all of which foreshadowed the defense counsel was to pursue. As the record thus indicates that counsel was not deficient in his opening statement, and Petitioner has otherwise failed to show that he was prejudiced by the opening statement in light of the strong evidence of his guilt, this claim, too, fails to provide a basis for habeas relief and is meritless.

In his final claim, Petitioner contends that he was abandoned by counsel when counsel, after trial, failed to challenge a draft sentencing report. The record of Petitioner's criminal matter, however, indicates that, after trial, counsel sought and obtained a modification of Petitioner's terms of pre-trial release, and that counsel was replaced by Petitioner's sentencing counsel before challenges to the draft PSR were due, and that in any event sentencing counsel was able to acquire

a continuance to prepare to challenge the PSR on Petitioner's behalf. (*See* Docket No. 17-51 at ECF Nos. 246, 254-56, 259.) Here, it does not appear that counsel abandoned Petitioner so much as Petitioner replaced counsel with a new attorney for sentencing. In addition, Petitioner has not otherwise shown prejudice because sentencing counsel was provided a continuance and ample opportunity both to file a motion for a new trial and to fully litigate Petitioner's sentencing. Petitioner, consequently, has failed to show that counsel's post-trial activities amount to ineffective assistance of counsel. Having reviewed all of Petitioner's claims, it is thus clear that Petitioner's ineffective assistance claims are all without merit, and that Petitioner's motion to vacate sentence must be denied as such.

### C.    Certificate Of Appealability

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because all of Petitioner's claims are meritless for the reasons expressed above, Petitioner has failed to make a substantial showing of a denial of a constitutional right, and his motion is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Petitioner's motion to vacate sentence (ECF No. 1) is

**DENIED**, and Petitioner is **DENIED** a certificate of appealability.  An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE